UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10325-GAO |
| | ) | |
| JON MINOTTI, | ) | |
| Defendant. | ) | |

**GOVERNMENT'S OPPOSITION TO TESTIMONIAL EVIDENTIARY HEARING**

The United States of America, by and through Assistant United States Attorney John T. McNeil, respectfully submits this opposition to the defendant's motion to have testimony taken at an evidentiary hearing at sentencing. There are two factual issues in dispute for purposes of sentencing: first, whether Minotti's co-conspirator, David Jordan, brandished his firearm during the robbery of Carlos Ruiz; second, if Jordan brandished the firearm, whether that brandishing was reasonably foreseeable by Minotti.

In the event the Court reaches an affirmative conclusion on both of these issues, Minotti must be sentenced to seven years on Count III of the Information, to be served on and after any sentence imposed on Counts I, II, and IV. See 18 U.S.C. §924(c)(1)(A)(ii). The parties have agreed in the plea agreement that, at a minimum, Minotti should be sentenced to five years on Count III of the Information, to be served on and after any sentence imposed on Counts I, II, and IV. See Plea Agreement at ¶3(b). Thus, this factual dispute relates to the difference between a five year and a seven year minimum mandatory sentence on Count III of the Information. Id.[1]

---

[1] The government notes that so long as Minotti continues to comply with the plea agreement, the government intends to move for a downward departure under U.S.S.G. §5K1.1 and 18 U.S.C. §3553(e). Thus, these minimum mandatory figures provide a starting point for a

With respect to the resolution of this factual dispute, the plea agreement notes:

> The parties also agree that the sentencing judge can find by a preponderance of the evidence any fact which is relevant to determining the mandatory minimum sentence under Count 3 of the Information and that the sentencing judge may consider any reliable evidence, including hearsay.

See Plea Agreement at ¶3.

To establish that Minotti's co-defendant, David Jordan, brandished a firearm during the course of the conspiracy, the government intends to rely on the transcript of the trial testimony of Carlos Ruiz, and several transcripts of calls made by Ruiz after Jordan held a gun on him. Ruiz's trial testimony, which is attached as Exhibit A, establishes that Jordan not only drew his weapon but pointed it at Ruiz's head during the robbery. The pertinent parts of the transcript are at: VI:12-13[2] ("I had a police officer come out with his gun pointing at my head"); VI:49 ("if he didn't have a gun on me, I would have hit him."); VII:55 (confirming on cross that Jordan pointed a gun at him); VII:64 (confirming on cross that Jordan held a silver revolver on him); VII:104 (same); VII:117 (referring to a call the day after the incident in which Ruiz said that the cop "pulled the gun on me"); VII:120 (same); VII:134 (confirming on re-cross that Jordan pulled a gun on him).

In addition, at the time of the robbery DEA was recording Ruiz's telephone calls. In two conversations after the robbery, Ruiz explains that Jordan held a gun on him. Copies of the transcripts of those calls, which were admitted at trial as Exhibits 8B and 11B, are attached as Exhibit B to this memorandum. The relevant portions of those calls appear in Exhibit 8B at pg. 3 and Exhibit 11B at pg. 2.

---

downward departure rather than an end point.

[2] Citations are to the trial day and the transcript page number.

Because Ruiz testified under oath at trial regarding the incident, and was cross-examined at length by counsel for Jordan and Bucci, there is no need to have Ruiz testify at Minotti's sentencing hearing. Both Jordan and Bucci had the same stake as Minotti in shaking Ruiz's testimony on the brandishing of the firearm; they both stand to receive the same two year enhancement under 18 U.S.C. §924(c)(1)(A)(ii). There is no reason to believe that cross-examination by Minotti's counsel will shed new light on this subject, or alter Ruiz's testimony.[3] Moreover, the plea agreement specifically permits the Court to make its decision on precisely such a record.[4]

The defendant also seeks to present the testimony of the two officers who were conducting surveillance of the defendant's robbery of Ruiz. Those officers, DEA Special Agent Jean Drouin and Massachusetts State Police Sgt Thomas Quin, testified that they were making observations through the back of a van parked some distance from Jordan during the robbery. At the time, they could only see the heads of those involved in the transaction because of the slope of the parking lot and cars parked between their van and Jordan. They could not see Jordan's hands, or any portion of his body below his shoulders during the relevant time frame. Because Ruiz testified that Jordan held the gun on him when Ruiz was sitting in his car, Jordan's weapon would necessarily be below his shoulders.

In any event, the officers also testified that they never observed Minotti at any time in the Malden Medical Center parking lot during their obstructed surveillance. Since Minotti has testified

---

[3] If counsel for Minotti desires to argue that Ruiz had a motive to fabricate some portion of his trial testimony, he can argue that at sentencing without additional testimony.

[4] The government also notes that Ruiz is currently incarcerated in another state. It is unclear whether he could be transported to this District in time for the scheduled hearing.

that he was not only in the parking lot with Ruiz, but took the drugs from Ruiz's car and ran from the parking lot with the drugs, it is clear that officers only saw bits and pieces of the robbery. Thus, the fact that officers did not see Jordan holding a weapon in his hand means nothing. Again, there is no need for agents to be called to testify, since the defendant can simply submit transcripts of their extensive trial testimony in lieu of live testimony.

The defendant also seeks the testimony of a DEA agent on the value of Minotti's cooperation. There does not appear to be a dispute about what the defendant did to cooperate; thus, there is no factual dispute regarding his cooperation. Instead, the defendant seeks some type of opinion or expert testimony from an agent with respect to the value of his efforts. No single agent is competent to render such an opinion. It is only the United States as a whole -- as represented by the United States Attorney for this District -- which can represent to the Court the value of the cooperation. The United States will object to any such testimony by an agent.

Finally, Minotti claims that he is eligible for the safety valve, and asserts that he needs an evidentiary hearing to develop his claim. Again, the written record – and Minotti's own trial testimony – is sufficient. The defendant is ineligible for the safety valve because he acted as an organizer of the conspiracy to rob Ruiz. See 18 U.S.C. §3553(f)(4) and U.S.S.G. §5C1.2(a)(4). Minotti testified at trial that he played a core role in the recruitment of Malden Police Detective David Jordan; the evidence also indicated that he was the hub of the communication between and among co-conspirators.[5]  See, e.g. United States v. Al-Sadawi, 432 F.3d 419, 426-427 (2nd Cir. 2005)(playing a significant role in the recruitment of one individual sufficient to qualify as an

---

[5] A copy of Trial Exhibit 28 is included as Exhibit C to this memorandum. That exhibit summarizes the telephone contacts among the co-conspirators on the date of the robbery, and two days following.

4

organizer).  Moreover, Minotti used his home as the base for the conspiracy – using it to meet with Bucci and Ruiz to set up the first cocaine transaction, to meet with Bucci and Muolo on the morning of the theft, and to rendezvous with Ruiz.  See, e.g. United States v. Dillard, 43 F.3d 299, 307 -308 (7th Cir. 1994)(use of defendant's office for key events evidence of organizational role).

While Bucci was undoubtedly the leader of the conspiracy and suggested to Minotti not only the plan of action but requested that Minotti recruit Jordan for a role in the theft, Minotti nonetheless played an organizational role as well.  In fact, at the outset, Jordan would not deal directly with Bucci or Muolo, but wanted to communicate only with Minotti.  See, e.g.  United States v. Cooper, 274 F.3d 230, 247 (5th Cir. 2001)(more than one person may qualify as a leader or organizer of a criminal association or conspiracy).  For these reasons,  Minotti is ineligible for the safety valve.

    For the reasons stated above, the government opposes the defendant's request for an evidentiary hearing which includes the testimony outlined in his motion.

                                      Respectfully Submitted,

                                      MICHAEL J. SULLIVAN
                                    UNITED STATES ATTORNEY

Date: June 29, 2006          By:    /s/ John T. McNeil
                                      JOHN T.  McNEIL
                                      Assistant U.S. Attorney
                                      (617) 748-3242

## CERTIFICATE OF SERVICE

    I, John T. McNeil, Assistant United States Attorney, do hereby certify that this document, filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non registered participants on this date.

                                      /s/ John T. McNeil
                                      JOHN T. McNEIL
                                      Assistant U.S. Attorney